CASE NO. 8:24-cv-2113-SDM-AEP

| | |
|---|---|
| PETITIONERS:<br><br>**VEAMCAST CORP,** a Florida C corporation | IN THE UNITED STATES DISTRICT COURT<br><br>MIDDLE DISTRICT OF FLORIDA |
| DEFENDANTS:<br><br>**ROKU INC,** a San Jose, California corporation | <br><br>TAMPA DIVISION |

**COMPLAINT OF ANTICOMPETITIVE BEHAVIOR BY A MONOPOLY**

Since 2010, Veamcast Corp (a Florida C-Corp), has been developing apps and an API for a video/voice/photo publishing and sharing service. The Veamcast apps rely heavily on the use of the Roku APIs. Veamcast allows its users to publish, share and communicate very much in the way the Facebook and other social media platform do except with more of an emphasis on one-to-one communication and user created playlists.  Our playlists can contain of any type of media, any URL, and deep links within other apps.  Those deep links 3rd party app owners would of course appreciate this because traffic is currency.  Our playlists can then be played or linked to on all platforms that support the link.  We prioritized our Roku app.  We also have a Windows app, an Android app, a web viewer and our own APIs and mailing systems. Our team is very small. It was tremendously harmed by Roku discontinuing third party apps.

On August 23, 2024, Joe Dean, Veamcast's founder posted this question as joedean62 to a thread he created on Roku's website (Exhibit A):

> **Mobile remote app viability**
>
> DOES THIS MEAN THAT ALL THE MOBILE REMOTE APPS ARE NOT GOING TO WORK ANYMORE? (last sentence)
>
> > *Support for sending ECP commands from within a Roku channel application has been discontinued. Channels may no longer include code in their channel application that is designed to issue any type of ECP command.* [Static Analysis testing](#) *has been updated to check channels for ECP commands. Channels that include ECP commands in their code will automatically be blocked from publishing to the Roku Channel Store.*
> > *In addition, ECP commands may not be sent from 3rd-party platforms (for example, mobile applications).*

The next day (Saturday August 24, another user named renojlm, a Community Streaming Expert, who has a tagline "I am not a Roku employee" replied:

> **Re: Mobile remote app viability**
>
> Sending ECP commands from within a Roku app running on a Roku device is not the same as sending an ECP command from an external non-Roku device.  It's not a new limitation.

> Where did you find any statement about ECP not being allowed from 3rd party platforms? That doesn't make any sense. If not from 3rd party platforms, then what good would ECP be?

Later that day another user named AVSGunnar, who also has a tagline "I am not a Roku employee" replied:

> **Re: Mobile remote app viability**
>
> @renojim
>
> I believe it was from here. https://developer.roku.com/docs/developer-program/dev-tools/external-control-api.md
>
> There is a line that states "In addition, ECP commands may not be sent from 3rd-party platforms (for example, mobile applications)."
>
> There was also a couple of older questions in the Developer forum that didn't really seem to make it any clearer. (at least to me).

The page referenced by the link is attached as Exhibit C.

Later that day renojlm replied:

> **Re: Mobile remote app viability**
>
> Ah, I do vaguely remember that. I didn't understand it then and I don't understand it now. I only use a few ECP commands,

> but they're still working for me.  I guess it's the "3rd-party platforms" part I don't get.  I use cURL and maybe it's different somehow?  They may be trying to kill off the numerous paid Roku remote apps that sometimes upset people that think Roku is charging for them (and are totally unnecessary if you ask me given Roku has an official app that's free).

Later that day, Joe Dean posted as joedean62:

> **Re: Mobile remote app viability**
>
> That's a good way to get \*\*bleep\*\* apps.  One vendor blocks out all others.  Should Roku be the only one we can discover content from?

The bleeped word was 'crappy' and it was done automatically with no prompt. It's interesting to note later in the thread how the word 'lawyer' could not be posted at all… not even bleeped.  An error message would appear. (Exhibit L1).  A screenshot of that error message was taken and an attempt to upload resulted in a 'flood' error (Exhibit L2).

Later that day, renojlm posted:

> **Re: Mobile remote app viability**
>
> @joedean62, I don't follow you; I feel like I must be missing something.  How does not allowing ECP from 3rd-party platforms

> affect discovering content? I can understand people with Roku remote apps that were making money off of people that didn't know there was a free Roku app being upset, but that's about it.

The following day, (Monday August 26), Joe Dean as joedean62 replied:

> **Re: Mobile remote app viability**
>
> This video demos an app I am working on. I can see Roku's position that any app on your network having control of your TV could be problematic, but they should offer a program for developers that implements security. They should embrace this. There is huge revenue potential.
>
> Video here: https://youtu.be/q6vg5-Gzoaw

The link is to a Veamcast post of a recorded video demonstrating the Veamcast platforms integration of their Roku app and some of the functions that were still working but were warned would no longer.

Later that day, another user named michalama, the only one who did **not** have a tagline denying to be a Roku employee posted:

> **Re: Mobile remote app viability**
>
> It looks like support for ECP commands from within a Roku channel applications and other platforms, including mobile remote apps, has been discontinued. To adapt, you might want to

> explore alternative methods for controlling Roku devices, such as using the Roku mobile app's built-in features or updating your channel to comply with the new guidelines.

The Roku employee's suggestion to 'explore alternative methods' comes to a very quick end. We will definitely not get the functionality we implemented and even if we could, it would clearly be foolish for any company to work with people who have such blatant disregard for the developers they steal ideas from.

Without evidence, we suggest the posters who claim to not work for Roku are most likely working for companies that contract to Roku (i.e. Cognizant, Accenture, Infosys, IBM, Wipro, Deloitte). We don't discount the possibility that one of these users is Anthony Wood himself.

Later that day, renojlm posted:

> **Re: Mobile remote app viability**
>
> @joedean62, thanks for sharing. Looks interesting, but it seems that anytime Roku opens up their devices to external apps they get burned by some douche bag that takes over a Roku device with some kind of scheme to show ads or otherwise make the douche bag money. I'm sure it's easier for them to just ban such uses than to implement some kind of security. A

> better place for this discussion is probably the developer section where I see you've also posted.

It's interesting to note that while 'lawyer' was forbidden and 'crappy' was bleeped, 'douche bag' seemed to make the cut and 'douche bag money' seems to refer to money made by apps other than Roku.

Later that day, Joe Dean as joedean62 posted:

> **Re: Mobile remote app viability**
>
> The L word is not allowed on this forum.

The post included a link to a recorded video demonstrating the error messages we encountered with the word 'lawyer' (Exhibit L1 and L2).

> It can be viewed here: https://youtu.be/aeluHdchFsE

This should deeply offend the Court. It is very unusual and concerning. Roku is clearly trying to avoid discussions of their crimes on their platform.

In a VIDEO INTERVIEW WITH ROKU'S ANTHONY WOOD on USA TODAY, he can be seen saying:

> "Another thing we think will change things dramatically is an App Store for TV. So just like the iPhone has an App Store, we

want later this year to launch an App Store for Roku for our box to let third parties, published content and applications that consumers can access directly from their TV."

It can be viewed here: https://www.youtube.com/watch?v=9A3iav9fLBc

Veamcast began work on its Roku App in December of 2019 (Exhibit V). When a 3rd party Roku app is tested, it is certainly possible for Roku to monitor what it's doing. It's the purpose of *Static Analysis testing*. Our Windows and Android apps were also available for download in beta form. Our app was registered in Roku's public channels (Exhibit G). Anybody could see what we were doing.

Roku launched Photo Streams (Exhibit R) on June 15, 2022. This feature allows Roku users to cast photos from their smartphones to their Roku devices. It's a subset of what Veamcast does and we're pretty sure it'll evolve into exactly what Veamcast does.

This is Veamcast's second filing of a COMPLAINT OF ANTICOMPETITIVE BEHAVIOR BY A MONOPOLY. Veamcast was also the brunt of blatant anti-competitive behavior from Facebook. We filed in this court on November 12, 2020 (Appendix F) and it was dismissed without prejudice for procedural reasons, most notably it was filed pro se. Attempts to obtain counsel went in vain. These attempts included an Open Letter to the Department of Justices of both the U.S. and the Philippines (Exhibit J). This was emailed and postal mailed to all members of

the Senate Judiciary Subcommittee on Competitive Policy, Antitrust and Consumer Rights and numerous other politicians.  We reached out to countless law firms asking for counsel. No law firms were keen on suing Facebook.  Maybe our emails hit the junk mail folder. There was a firm that contacted us on LinkedIn and seemed to be interested but then ghosted us after we showed our hand.

The statement from Honorable Charlene Honeywell's REPORT AND RECOMMENDATIONS in reply to our complaint shocked, angered and discouraged us. The case could not be any clearer.  Any further info needed to prove our claim would be need to be obtained through subpoena:

> "The allegations in the complaint fail, however, to set forth factual allegations sufficient to state a cognizable claim."

Clearly, Facebook can act with impunity if complete proof of what happens behind their firewalls needs to presented.

Senator Amy Klobuchar was on the list of people we wrote as she is a trailblazer as the Chairwomen of the Senate Judiciary Subcommittee on Competitive Policy, Antitrust and Consumer Rights.  We sent it to them all.  We got crickets back.  We were not surprised to see Ms. Klobuchar is dedicated to defending one rich monopolistic company against other another.  Appendix K is a press release of her defending Roku against Google.  She and all committee members should

be investigated to see their lobbyist ties.  It's a bipartisan effort to carve up that lobby pie as the oligarchs struggle for control.  Investigate their investments deeply. Don't forget the family members.

Veamcast's founder Joe Dean's other startup, Electronic Sports had its concept blatantly stolen by Nintendo (Appendix N).  If this type of thing happens to one person three times by three companies in three different ways, how prevalent must it be?

This behavior has far reaching consequences. Consumers will clearly get substandard products like Roku and Facebook. It also kills off monetization opportunities for local news and other democratic mainstays.  The worst part is the politicians being so obtuse to it, yet campaigning on it.  They collude with the tech oligarchs to censor their crimes.  They conduct circus hearings.

With these oligarchs in charge, we will be presented with content aligned with their ideals.  Here is a video of Anthony Wood explaining his philanthropy. He explains that "you can't help people, they have to help themselves", then speaks with pride about his donations to the cause of 'curing jet lag' because he hates that. It ruins his vacation. He's working on gene replacement therapy for it.

Link can be viewed here: https://youtu.be/yjlg8rSWvZM

These oligarchs control our communication completely.  Email has nearly replaced the Post Office for official business which until fairly recently had a near monopoly on delivery of the mail, a responsibility dating back to the Articles of Confederation (1777). Having Microsoft (Outlook), Google (Gmail), AOL/Yahoo and a handful of others controlling our communications, filtering what should reach our inboxes, running all our mail through their learning engines is a total recipe for disaster. It is an incredibly large mistake that no one seems to talk about.  The government needs to fix this with a required header to the SMTP protocol which delivers ALL email. Mail providers must populate a header with a count of how many emails were sent by that user in the past X hours/minutes and only those sending bulk should be subject to any scrutiny. All other email should be delivered person to person and reach their inbox without any analysis. The receiver can block and report email abuse violations. It's not difficult to do but there is clearly a disincentive. Nationalize communication and data storage rules and don't allow the FBI, CIA, NSA, TSA, FCC, CNN, FISA, Microsoft, Amazon, The Courts, The Police, Doris Day or Matt Busby in without reason and full accountability.

While Veamcast cannot determine exactly what is happening, the evidence we get from sending email campaigns definitely tells us our links get manipulated and we get a lot of traffic with the data mangled.  We also get thousands of hits from companies hacking our

URLs and we don't see any economic benefit to hacking us as we're under development. So, it begs explanation.

Roku is part of a cartel of tech companies who collude and carve out niches for each other. The Senate Judiciary Subcommittee on Competitive Policy, Antitrust and Consumer Rights act as referees.

Roku has brazenly grabbed dominance in the TV streaming market and now they are bringing their **bleep** platform to a near total monopoly. It is clearly prohibited by the Sherman and Clayton Acts. They took every action possible to thwart competitors. They used the Roku API to gain intelligence on the competition and then when the efforts threatened their market share, the defendants would systematically shut them down and steal the concepts. The evidence presented here is as clear as could possibly be.

The primary jurisdictional basis for an antitrust claim in federal court would be:

a) Federal Question Jurisdiction (28 U.S.C. § 1331): The case arises under federal law, specifically the Sherman Antitrust Act (15 U.S.C. §§ 1-7) and/or the Clayton Act (15 U.S.C. §§ 12-27).

b) Specific Antitrust Jurisdiction (15 U.S.C. § 4): The Clayton Act provides that federal district courts have jurisdiction to "prevent and restrain violations" of antitrust laws.

Based on the facts, the following claims could be asserted:

a) Violation of Sherman Act Section 2 (15 U.S.C. § 2): Monopolization or attempt to monopolize the market.

b) Violation of Clayton Act Section 3 (15 U.S.C. § 14): Exclusive dealing arrangements that substantially lessen competition.

In a proximate result of the aforementioned, Veamcast Corp has suffered devastating loss of opportunity, severe financial injury, emotional suffering and damages in the following ways:

Plaintiffs implemented better functionality and then defendants disabled that functionality piece by piece. This strategy was an effective way to prevent the Plaintiffs from launching, getting traffic and building a user base. It wasted a great deal of their resources and development efforts. Plaintiffs were not only unable to gain users through the Roku platform but the work and money they put into all the Roku API interfaces was lost. That time and effort could have been used to get users through other sources.

Any developer of an app platform seeking investment will be asked how many users they have. The Plaintiffs efforts to raise funds were clearly thwarted due to the time wasted with this. The deceptive behavior of the defendants in both the Facebook and the Roku suits added to the delay in the Plaintiff efforts. The distraction and fallout have been near fatal to the company. The potential opportunity cost exceeds the total market value of Roku Inc or possibly even Facebook's.  This complaint only contains information we know to be true but the Plaintiffs believe there is more to this, that the behavior goes back even further and that both Roku and Facebook have policies and procedures in place to do this to any company that threatens them or disagrees with their agenda.

In an industry that prides itself on companies that grow out of garages, the defendants and their cohort's duplicity and deceit doubtlessly took out countless fledgling tech companies in their quest for dominance.  Nothing could be less American.  It's nothing less than criminal.

Veamcast Corp seeks punitive damages and compensatory damages in the amount of $10 billion, the approximate market value of the Roku company, according to proof, the cost of the lawsuit and whatever else the court sees just and fit to award.  We also request the court open criminal investigations into any or all of the allegations presented. The Court should advocate for a class action lawsuit on behalf of all Roku 3rd party developers and all developers of

Facebook apps which use their API. Anthony Wood should be criminally charged. The entire Roku board should to be replaced and the existing one sent to an after-school program to learn not to be poor. A full investigation should be conducted. Dissolve the Senate Judiciary Subcommittee on Competitive Policy, Antitrust and Consumer Rights. Justices Honeywell and Porcelli should explain why no criminal investigation was ordered for Mark Zuckerberg and Facebook when I reported their crimes. The law does not designate between which Court to file in for Criminal v. Civil. If not you, who? Dial 911? Take out the Bat Light? If we don't arrest Anthony Wood and Mark Zuckerberg, who could possibly qualify? Cheryl Sandborn? Peter Thiel? Ten years ago, he taught a class at Stanford called "Competition is For Losers".

https://www.youtube.com/watch?v=3Bpw5mq2QHk&t=598s

Now he's speaking at the RNC? Watch this video to the end. It's a side splitter. It clearly demonstrates how stories can get suppressed.

https://www.youtube.com/watch?v=XvqG4UQR08k

Grab them, separate them, hang them upside down and see what falls out (figuratively).

a) Violation of Sherman Act Section 2 (15 U.S.C. § 2): Monopolization or attempt to monopolize the market

1. Criminal Penalties:
   - Felony charges for individuals
   - Up to 10 years in prison for individuals
   - Fines up to $1 million for individuals
   - Fines up to $100 million for corporations, or twice the amount gained from the illegal acts or twice the money lost by the victims if either of those amounts is over $100 million

2. Civil Penalties:
   - Injunctive relief (court orders to stop the illegal behavior)
   - Treble damages (three times the amount of actual damages) in private lawsuits
   - Structural remedies, which may include breaking up the company

3. Other Consequences:
   - Reputational damage
   - Potential debarment from government contracts

b) Violation of Clayton Act Section 3 (15 U.S.C. § 14): Exclusive dealing arrangements that substantially lessen competition

1. Civil Penalties:
   - Injunctive relief to stop the anticompetitive practices
   - Monetary penalties, which can be substantial
   - Treble damages in private lawsuits

2. Other Consequences:

- Nullification of exclusive dealing contracts
- Reputational damage
- Potential oversight and reporting requirements

The statements above and the addendums are true to the best of my knowledge.

*[signature]*

---

PETITIONER SIGNATURE
JOSEPH DEAN, VEAMCAST FOUNDER AND CEO
5940 30th AVE S, UNIT 111, GULFPORT FL 33707
310-593-4485
**PENDING COUNSEL**
**SEEKING PUBLIC RELATIONS**
FILING PRO SE
Last modification: AUGUST 31, 2024

## Addendum

Note: Some of the evidence is presented in music video format.

Much of it is irreverent. It was done in an attempt to educate the general public about how dystopian society has become under the rulership of the tech cartel.

We can appreciate how comparing the character of the defendant's CEO to that of a pig could potentially undermine the seriousness and professionalism of this complaint, however, we strongly feel we infer it appropriately.

This case is a very unusual one about a very concerning matter affecting world security. 'Bond villain' type stuff. The Joker, The Penguin and Lex Luther have back stories that explain their megalomania.

Attached (Exhibit M) is an email thread which has been typical. We don't believe we can find counsel. We request the court appoint it. DOJ prosecutor?

# Appendix

*All threads were saved and published to* https://veamcast.com/rokusuxsass

Note: some of the evidence is presented in music video format.

Exhibit A: Full thread on Roku website in PDF as it was at the time of the writing

Exhibit B: Screenshot of Roku's External Protocol (ECP) page where the instruction on using it are shown.  Recent changes are highlighted (by Roku)

Exhibit C: Complete Roku ECP page

Exhibit L: Screenshot of Roku's messaging refusing content that contains the word 'lawyer'

Exhibit L2: Screenshot of Roku's messaging service refusing a screenshot of Roku's messaging refusing content that contains the word 'lawyer'

Exhibit E: Repository Timestamp showing first date check-in

Exhibit R: Roku Photo Streams Screenshot

Exhibit G: Roku website screenshot showing Veamcast account info

Exhibit J: Open Letter to the U.S. and Philippines Departments of Justice

Exhibit K: News Release: Klobuchar Statement on Roku Concerns Regarding the Effect of Google's Self-Preferencing Business Practices

Exhibit F: Veamcast v Facebook

Exhibit N: Nintendo blatantly steals Electronic Sports idea

Exhibit V: Video demonstrating Veamcast for Roku on older v newer TV

Exhibit M: Typical lawyer correspondence when seeking counsel. Please review it for applicable ethics violations.

Exhibit Z: A VEAM from 2015 with me telling my niece that it's getting hard to hit the Inbox. (not cited)

https://veamcast.com/veam?ownerid=ecf500e834ce41c09735493d84effa1c&packageid=06c9d207a87e44b39c09f48903739cd6

# Contact Info:

*Roku:*

Louise Pentland

Senior Vice President and General Counsel, Roku, Inc.

1701 Junction Court, Suite 100, San Jose, CA 95112

generalcounsel@roku.com

Phone number: 408-556-9391

Fax number: 408-364-1260


**Veamcast:**

Joseph Dean, founder and CEO


(legal mails here please)

joe@joedean.net


5941 Mayfair Park Ct. Tampa FL, 33647

310-593-4485


Veamcast Corp

5940 30th Avenue South Unit 111

Gulfport FL 33647